**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **SHAD BLUNT,**<br><br>***Plaintiff*,**<br><br>**v.**<br><br>**AMORE E AMORE INC. and GAIL PARKER,**<br><br>***Defendants*.** | **CIVIL ACTION FILE NO.**<br><br>**JURY DEMAND** |

# COMPLAINT

**NOW COMES** Shad Blunt (hereinafter "Plaintiff") and asserts this Complaint against Defendants Amore e Amore, Inc. (hereinafter "Defendant Amore") and Gail Parker (hereinafter "Defendant Parker") (hereinafter collectively "Defendants") for violations of the Fair Labor Standards Act, 29 U.S.C. §201 *et. seq*. (hereinafter "FLSA" or "the Act"). Plaintiff states more fully as follows:

## INTRODUCTION

1. Plaintiff worked for Defendants within three (3) years preceding the filing of this Complaint. Defendants failed and willfully refused to pay Plaintiff minimum wages equal to or exceeding the amount required under the FLSA, 29 U.S.C. §206. Defendants failed and willfully refused to pay Plaintiff overtime wages equal to one and one-half times the Plaintiff's "regular rate" as required by the FLSA, 29 U.S.C. §207. Plaintiff seeks his unpaid wages and overtime for three (3) years preceding the

filing of this Complaint (hereinafter "the Relevant Period"), liquidated damages, and his attorneys' fees and costs of litigation under the Act, amongst other FLSA claims.

2. More specifically, Defendants violated the Act in several specific ways. First, Defendants tacitly encouraged, and were aware of, Plaintiff's working off-the-clock due to the excessive side-work required of servers. Second, Defendants impermissibly paid service staff the tipped minimum wage for (a) improper side-work tasks, (b) excessive side-work tasks (greater than twenty percent (20%) of each work shift) and (c) non-contemporaneous side-work tasks. Third, Defendants violated the tip pool regulations in that (a) managers and back of house employees participated in and received money from the tip pool, (b) non-tipped employee parties were paid with monies from the server's tip pool, (c) no accurate description of the tip pool was ever provided to the service staff, and, (d) accurate records of gross tips received and the tip pool distribution were never kept and/or provided to the service staff. Furthermore, Defendants also violated the Act by retaliating against the Plaintiff when he complained about the impermissible tip pool.

## JURISDICTION

3. Plaintiff brings this action under the Fair Labor Standards Act, 29 U.S.C. §201 *et. seq*. This Court has original jurisdiction pursuant to 29 U.S.C. §216(b), and 28

U.S.C. §1331, §1132(a)(1)(B), and §1337. The Court has pendent jurisdiction over Plaintiff's Georgia state law claims pursuant to 28 U.S.C. §1367.

## VENUE

4. Defendant Amore a Georgia-based corporation may be served via its Registered Agent Patricia Portera (hereinafter "Registered Agent"). Defendant Amore operates a business, Amore e Amore, a restaurant, with its principal location at 467 North Highland Avenue, Atlanta, Fulton County, Georgia 30307, and may be served through its Registered Agent at 1000 Park Avenue, Unit 2003, Atlanta, Georgia 30326. Venue for this action properly lies in the Northern District of Georgia, Atlanta Division, pursuant to 28. U.S.C. §1391(b) and §1391(c)(2), and Local Rule 3.1, N.D. Ga.

## FACTS REGARDING DEFENDANTS' COVERAGE UNDER THE FLSA
### Sub-Part 1: Defendant Company

5. Defendant Amore operates a restaurant, named Amore e Amore, with its principal location at 467 North Highland Avenue, Atlanta, Fulton County, Georgia 30307 (hereinafter the "Restaurant").

6. Defendant Amore operate the Restaurant to sell food, such as salads and pasta dishes, as well as alcoholic beverages, to the public in Atlanta, Fulton County, Georgia.

7. Defendant Amore buys supplies and equipment, including beef and other food products, wine, liquor, and beer out of the stream of interstate commerce for use and sale at the Restaurant.

8. Defendant Amore utilizes interstate credit/debit card processing in the course of its business at the Restaurant.

9. Defendant Amore utilizes the interstate banking system in the course of its business at the Restaurant.

9. In calendar year 2021, Defendant Amore had an annual gross volume of sales made or business done of not less than five hundred thousand dollars ($500,000), exclusive of excise taxes at the retail level, as defined in §3(s)(1) of the Act. 29 U.S.C. §203(s)(1).

10. In calendar year 2022, Defendant Amore had an annual gross volume of sales made or business done of not less than five hundred thousand dollars ($500,000), exclusive of excise taxes at the retail level, as defined in §3(s)(1) of the Act. 29 U.S.C. §203(s)(1).

11. In calendar year 2023, Defendant Amore had an annual gross volume of sales made or business done of not less than five hundred thousand dollars ($500,000),

exclusive of excise taxes at the retail level, as defined in §3(s)(1) of the Act. 29 U.S.C. §203(s)(1).

12. In calendar year 2024, Defendant Amore had an annual gross volume of sales made or business done of not less than five hundred thousand dollars ($500,000), exclusive of excise taxes at the retail level, as defined in §3(s)(1) of the Act. 29 U.S.C. §203(s)(1).

13. Defendant Amore constitutes an enterprise engaged in commerce or in the production of goods or services for commerce within the meaning of §3(r), §3(s)(1), §6(a) and §7(a) of the Act, 29 U.S.C. §203(r), §203(s)(1), §206(a) and §207(a), for the years 2021 through 2024.

14. For the calendar year 2021, Defendant Amore is covered by, and subject to, the requirements of the Fair Labor Standards Act, 29 U.S.C. §201 *et. seq.*

15. For the calendar year 2022, Defendant Amore is covered by, and subject to, the requirements of the Fair Labor Standards Act, 29 U.S.C. §201 *et. seq.*

16. For the calendar year 2023, Defendant Amore is covered by, and subject to, the requirements of the Fair Labor Standards Act, 29 U.S.C. §201 *et. seq.*

17. For the calendar year 2024, Defendant Amore is covered by, and subject to, the requirements of the Fair Labor Standards Act, 29 U.S.C. §201 *et. seq.*

18. Defendant Amore is an “employer” in an industry affecting commerce within the meaning of §3(d) of the Act, 29. U.S.C. §203(d).

19. Defendant Amore was an "employer" of Plaintiff as defined in §3(d) of the Act. 29 U.S.C. §203(d), in 2021, 2022, 2023, and 2024.

20. During the relevant time period – 2021 through 2024 – Defendant Amore constitutes an enterprise engaged in commerce or in the production of goods or services for commerce within the meaning of §3(r), §3(s)(1), §6(a) and §7(a) of the Act. 29 U.S.C. §203(r), §203(s)(1), §206(a) and §207(a).

Sub-Part 2: Owner/Manager as "Employers"

21. Defendant Parker is the owner and operates Defendant Amore's Restaurant on behalf of Defendant Parker, the owner.

22. Defendant Parker, along with other individuals, manages the day-to-day operations of Defendant Amore.

23. Defendant Parker acted and acts directly in the interest of Defendant Amore in relation to Defendant Amore's employees such as Plaintiff. Thus, Defendant Parker was an "employer" of the Plaintiff within the meaning of §3(d) of the FLSA, 29 U.S.C. §203(d).

FACTS REGARDING PLAINTIFF'S EMPLOYMENT UNDER THE FLSA

Sub-Part 1: Basic Employment Facts.

24. Plaintiff was employed by Defendant Amore as a server from approximately 2020 through the first week of May 2022 (hereinafter the "First Employment Term") before taking a leave of absence. Plaintiff subsequently worked for Defendants as a

server from approximately late September 2022 through the first week of November 2024 (hereinafter the "Second Employment Term"(First Employment Term and Second Employment Term collectively as "Actionable Period.")

25. Defendant Amore paid the Plaintiff an hourly wage of $2.14 per hour, plus tips shared via a tip pool to which Plaintiff contributed, for his work as a server.[1]

26. Defendant Amore did not pay the Plaintiff the Federal minimum wage of $7.25 per hour for his work as a server.

27. During the Actionable Period, the Restaurant is open to the public for service from 5:00 PM to 10:00 PM Tuesdays, Wednesdays, Thursdays, and Sundays.

28. During the Actionable Period, the Restaurant is open to the public for service from 5:00 PM to 11:00 PM on Fridays and Saturdays.

29. During the Actionable Period, Plaintiff worked at the Restaurant on behalf of the Defendant Amore as a server an average of six (6) shifts a week, or approximately *every* day of the week the Restaurant is open to the public, save an annual vacation.

30. During the Actionable Period, Plaintiff generally arrived no less than two-and-one-half (2.5) to three (3) hours before the opening of the Restaurant to the public at 5:00 PM.

[1] Facts regarding overtime hours, overtime wages, and tips will be discussed subsequently.

31. During the Actionable Period, Plaintiff was relieved of server duties and allowed to leave as soon as the last table has of customers has left the Restaurant.

32. During the Actionable Period, Plaintiff left on average no earlier than 10:30 to 11:00 PM each evening.

33. Defendant Amore recorded the Plaintiff's hours worked on a worksheet in which the Plaintiff manually recorded his start and finish time at the end of each shift; after Defendant Amore used an A.D.P. based clock in/clock out system to record Plaintiff's work hours.

34. During the Actionable Period, Defendants paid Plaintiff on a weekly basis, with the work week beginning on Sundays and ending on Saturdays.

<u>Sub-Part 2: Impermissible Side-Work Paid at Tipped Wage Rate</u>

35. Plaintiff regularly worked before the opening of the Restaurant at the sub-minimum wage rate of $2.14 an hour due to the excessive and unrealistic side-work expectations of Defendants.

36. Defendant Amore, Defendant Parker, and other management and/or owners were well-aware of the practice of servers working at the rate of $2.14 per hour for work that was not "tip producing" work.

37. Defendant Amore paid the Plaintiffs the "tipped minimum wage," i.e., $2.14 (or $5.00 per hour), *see* 29 U.S.C. §203(m)(2), for ***<u>all</u>*** hours worked regardless of the tasks performed by the Plaintiff.

38. Defendant Amore required the Plaintiff to perform a wide variety of "side work" tasks.

39. Plaintiff, employed as a server, was required in general during his work at the Restaurant to prepare the Restaurant's "front of house" for opening, take orders and answer customer's questions, and provide and serve food, drinks, and spirits, to customers.

40. Servers, including the Plaintiff, were required to perform the following tasks (herein collectively known as "Side Work Tasks") and are not directly related to Plaintiff's tip earning labor. (this list is not exhaustive):

(a) cleaning various areas of the Restaurant;

(b) polishing glasses for use by customers;

(c) vacuuming the Restaurant;

(d) wipe booths in the Restaurant;

(e) bring wine from the storage area to the bar;

(f) change batteries in various devices;

(g) roll silverware; and,

(h) restock coffee.

41. Plaintiff worked approximately two and one-half (2.5) to three (3) hours in contiguous time each shift working to complete the Side Work Tasks.

42. The assigned Side Work Tasks were performed before service of the Restaurant's customers for tips and were not performed incidental to the Plaintiff's service work during the Restaurant's hours of operation open to the public.

43. The total amount of time Plaintiff worked on Side Work typically exceeded twenty (20) percent of the total shift time as a server

Sub-Part 3: Unpaid Overtime Violations With No Overtime Differential

44. Defendant Amore systematically and regularly failed to pay Plaintiff for his overtime wages.

45. During the term from approximately December 2021 through on or about January 28, 2023[2], Defendant Amore failed to pay Plaintiff one and one half (1.5) the minimum wage for **any** hours worked in excess of forty hours in a work week.

46. For the work week January 2nd through January 8, 2022, Plaintiff worked 44 hours and Defendants failed to pay Plaintiff one and one half (1.5) times the minimum wage for the four (4) hours over forty hours Plaintiff worked in this work week.

47. For the workweek February 6th through February 12th, 2022, Plaintiff worked 46 hours and Defendants failed to pay Plaintiff one and one half (1.5) times the

[2] Defendants paid Plaintiff overtime at the rate of $3.21 for the pay period January 15, 2023, through January 21, 2023.

minimum wage for the six (6) hours over forty hours Plaintiff worked in this work week.

48. For the workweek February 13th through February 19th, 2022, Plaintiff worked 62 hours and Defendants failed to pay Plaintiff one and one half (1.5) times the minimum wage for the twenty-two (22) hours over forty hours Plaintiff worked in this work week.

49. For the workweek February 20th through February 26th, 2022, Plaintiff worked 47 hours and Defendants failed to pay Plaintiff one and one half (1.5) times the minimum wage for the seven (7) hours over forty hours Plaintiff worked in this work week.

50. For the workweek March 13th through March 19th, 2022, Plaintiff worked 42 hours and Defendants failed to pay Plaintiff one and one half (1.5) times the minimum wage for the two (2) hours over forty hours Plaintiff worked in this work week.

51. For the workweek March 27th through April 2nd, 2022, Plaintiff worked 43 hours and Defendants failed to pay Plaintiff one and one half (1.5) times the minimum wage for the three (3) hours over forty hours Plaintiff worked in this work week.

52. For the workweek April 3rd through April 9th, 2022, Plaintiff worked 41 hours and Defendants failed to pay Plaintiff one and one half (1.5) times the

minimum wage for the one (1) hour over forty hours Plaintiff worked in this work week.

53. For the workweek April 10th through April 16th, 2022, Plaintiff worked 44 hours and Defendants failed to pay Plaintiff one and one half (1.5) times the minimum wage for the four (4) hours over forty hours Plaintiff worked in this work week.

54. For the workweek April 17th through April 23rd, 2022, Plaintiff worked 52 hours and Defendants failed to pay Plaintiff one and one half (1.5) times the minimum wage for the twelve (12) hours over forty hours Plaintiff worked in this work week.

55. For the workweek April 24th through April 30th, 2022, Plaintiff worked 43 hours and Defendants failed to pay Plaintiff one and one half (1.5) times the minimum wage for the three (3) hours over forty hours Plaintiff worked in this work week.

56. For the workweek May 1st through May 7th, 2022, Plaintiff worked 43 hours and Defendants failed to pay Plaintiff one and one half (1.5) times the minimum wage for the three (3) hours over forty hours Plaintiff worked in this work week.

57. For the workweek May 8th through May 14th, 2022, Plaintiff worked 42 hours and Defendants failed to pay Plaintiff one and one half (1.5) times the minimum wage for the two (2) hours over forty hours Plaintiff worked in this work week.

58. For the workweek September 25th through October 1st, 2022, Plaintiff worked 54 hours and Defendants failed to pay Plaintiff one and one half (1.5) times the minimum wage for the fourteen (14) hours over forty hours Plaintiff worked in this work week.

59. For the workweek October 2nd through October 8th, 2022, Plaintiff worked 53 hours and Defendants failed to pay Plaintiff one and one half (1.5) times the minimum wage for the thirteen (13) hours over forty hours Plaintiff worked in this work week.

60. For the workweek October 16th through October 22nd, 2022, Plaintiff worked 51 hours and Defendants failed to pay Plaintiff one and one half (1.5) times the minimum wage for the eleven (11) hours over forty hours Plaintiff worked in this work week.

61. For the workweek October 23rd through October 29th, 2022, Plaintiff worked 46 hours and Defendants failed to pay Plaintiff one and one half (1.5) times the minimum wage for the six (6) hours over forty hours Plaintiff worked in this work week.

62. For the workweek November 13th through November 19th, 2022, Plaintiff worked 52 hours and Defendants failed to pay Plaintiff one and one half (1.5) times the minimum wage for the twelve (12) hours over forty hours Plaintiff worked in this work week.

63. For the workweek November 20th through November 26th, 2022, Plaintiff worked 42 hours and Defendants failed to pay Plaintiff one and one half (1.5) times the minimum wage for the two (2) hours over forty hours Plaintiff worked in this work week.

64. For the workweek November 27th through December 3rd, 2022, Plaintiff worked 44 hours and Defendants failed to pay Plaintiff one and one half (1.5) times the minimum wage for the four (4) hours over forty hours Plaintiff worked in this work week.

65. For the workweek December 4th through December 10th, 2022, Plaintiff worked 55 hours and Defendants failed to pay Plaintiff one and one half (1.5) times the minimum wage for the fifteen (15) hours over forty hours Plaintiff worked in this work week.

66. For the workweek December 11th through December 17th, 2022, Plaintiff worked 56 hours and Defendants failed to pay Plaintiff one and one half (1.5) times the minimum wage for the sixteen (16) hours over forty hours Plaintiff worked in this work week.

67. For the workweek December 18th through December 24th, 2022, Plaintiff worked 57 hours and Defendants failed to pay Plaintiff one and one half (1.5) times the minimum wage for the seventeen (17) hours over forty hours Plaintiff worked in this work week.

68. For the workweek December 25th through December 31, 2022, Plaintiff worked 48 hours and Defendants failed to pay Plaintiff one and one half (1.5) times the minimum wage for the eight (8) hours over forty hours Plaintiff worked in this work week.

69. For the workweek January 8th through January 14th, 2023, Plaintiff worked 46 hours and Defendants failed to pay Plaintiff one and one half (1.5) times the minimum wage for the six (6) hours over forty hours Plaintiff worked in this work week.

70. For the workweek January 22nd through January 28th, 2023, Plaintiff worked 55 hours and Defendants failed to pay Plaintiff one and one half (1.5) times the minimum wage for the fifteen (15) hours over forty hours Plaintiff worked in this work week.

Sub-Part 4: Unpaid Overtime Violations With Illegal Overtime Differential

71. During the term from approximately January 2023 through on or about November 2024, Defendants failed to properly pay Plaintiff one and one half (1.5) the minimum wage for any hours worked in excess of forty hours in a work week.

72. During the term from approximately January 2023 through on or about November 2024, Defendants paid Plaintiff at the improper overtime rate of $3.21 per hour, or 1.5 times Plaintiff's sub-minimum wage of $2.14.

73. The proper calculation for a tipped employee's overtime pay is available in the United States Department of Labor Wage and Hour Division's Fact Sheet #15 (hereinafter "Fact Sheet #15"), available here: https://www.dol.gov/agencies/whd/fact-sheets/15-tipped-employees-flsa. Fact Sheet #15 states that "The maximum tip credit that an employer can currently claim is $5.12 per hour: ($7.25 - $2.13 direct (or cash) wage = $5.12)."

74. The minimum wage for overtime wages is one-and-a-half times the minimum wage, or $7.25 x 1.5 = $10.875 (or $10.88, rounded up).

75. The proper calculation for the minimum wage at an overtime rate for a party receiving the *maximum tip credit* that can be claimed by an employer is as follows: $7.25 x 1.5 = $10.88[3], less the *maximum tip credit* of $5.12, for a direct or cash overtime wage is $5.76 (rounded up from $5.755).

76. In 2023 and 2024, Defendants paid Plaintiff a direct overtime wage of $3.21 for hours worked in excess of forty hours per work week, which is substantially less than the direct overtime wage of $5.76 (rounded up from $5.755) owed Plaintiff for each hour over forty worked in a work week (after accounting for the maximum tip credit of $5.12 per hour).

[3] $10.875 rounded up to $10.88

77. For the workweek January 15th through January 21st, 2023, Plaintiff worked 41 hours and Defendants paid Plaintiff $3.21 cents for the one (1) hour over forty hours Plaintiff worked in this work week.

78. For the workweek January 29th through February 4th, 2023, Plaintiff worked 23 hours and Defendants paid Plaintiff $3.21 cents for each of the thirteen (13) hours over forty hours Plaintiff worked in this work week.

79. For the workweek February 5th through February 11th, 2023, Plaintiff worked 54 hours and Defendants paid Plaintiff $3.21 cents for each of the fourteen (14) hours over forty hours Plaintiff worked in this work week.

80. For the workweek February 12th through February 18th, 2023, Plaintiff worked 53 hours and Defendants paid Plaintiff $3.21 cents for each of the thirteen (13) hours over forty hours Plaintiff worked in this work week.

81. For the workweek February 19th through February 25th, 2023, Plaintiff worked 54 hours and Defendants paid Plaintiff $3.21 cents for each of the fourteen (14) hours over 40 hours Plaintiff worked that work week.

82. For the workweek February 19th through February 25th, 2023, Plaintiff worked 54 hours and Defendants paid Plaintiff $3.21 cents for each of the fourteen (14) hours over forty hours Plaintiff worked that work week.

83. For the workweek February 26th through March 4th, 2023, Plaintiff worked 54 hours and Defendants paid Plaintiff $3.21 cents for each of the fourteen (14) hours over forty hours Plaintiff worked that work week.

84. For the workweek March 5th through March 11th, 2023, Plaintiff worked 54 hours and Defendants paid Plaintiff $3.21 cents for each of the fourteen (14) hours over forty hours Plaintiff worked that work week.

85. For the workweek March 12th through March 18th, 2023, Plaintiff worked 53 hours and Defendants paid Plaintiff $3.21 cents for each of the thirteen (13) hours over forty hours Plaintiff worked that work week.

86. For the workweek March 19th through March 25th, 2023, Plaintiff worked 52 hours and Defendants paid Plaintiff $3.21 cents for each of the twelfth (12) hours over forty hours Plaintiff worked that work week.

87. For the workweek March 26th through April 1st, 2023, Plaintiff worked 52 hours and Defendants paid Plaintiff $3.21 cents for each of the twelve (12) hours over forty hours Plaintiff worked that work week.

88. For the workweek April 2nd through April 8th, 2023, Plaintiff worked 51 hours and Defendants paid Plaintiff $3.21 cents for each of the eleven (11) hours over forty hours Plaintiff worked that work week.

89. For the workweek April 9th through April 15th, 2023, Plaintiff worked 43 hours and Defendants paid Plaintiff $3.21 cents for each of the three (3) hours over forty hours Plaintiff worked that work week.

90. For the workweek April 16th through April 22nd, 2023, Plaintiff worked 43 hours and Defendants paid Plaintiff $3.21 cents for each of the three (3) hours over forty hours Plaintiff worked that work week.

91. For the workweek April 23rd through April 29th, 2023, Plaintiff worked 52 hours and Defendants paid Plaintiff $3.21 cents for each of the twelve (12) hours over forty hours Plaintiff worked that work week.

92. For the workweek April 30th through May 6th, 2023, Plaintiff worked 46 hours and Defendants paid Plaintiff $3.21 cents for each of the six (6) hours over forty hours Plaintiff worked that work week.

93. For the workweek May 7th through May 13th, 2023, Plaintiff worked 43 hours and Defendants paid Plaintiff $3.21 cents for each of the three (3) hours over forty hours Plaintiff worked that work week.

94. For the workweek May 14th through May 20th, 2023, Plaintiff worked 44 hours and Defendants paid Plaintiff $3.21 cents for each of the four (4) hours over forty hours Plaintiff worked that work week.

95. For the workweek May 21st through May 27th, 2023, Plaintiff worked 52 hours and Defendants paid Plaintiff $3.21 cents for each of the twelve (12) hours over forty hours Plaintiff worked that work week.

96. For the workweek May 28th through June 3rd, 2023, Plaintiff worked 52 hours and Defendants paid Plaintiff $3.21 cents for each of the twelve (12) hours over forty hours Plaintiff worked that work week.

97. For the workweek June 4th through June 10th, 2023, Plaintiff worked 44 hours and Defendants paid Plaintiff $3.21 cents for each of the four (4) hours over forty hours Plaintiff worked that work week.

98. For the workweek June 11th through June 17th, 2023, Plaintiff worked 42 hours and Defendants paid Plaintiff $3.21 cents for each of the two (2) hours over forty hours Plaintiff worked that work week.

99. For the workweek June 18th through June 24th, 2023, Plaintiff worked 43 hours and Defendants paid Plaintiff $3.21 cents for each of the three (3) hours over forty hours Plaintiff worked that work week.

100. For the workweek June 25th through July 1st, 2023, Plaintiff worked 42 hours and Defendants paid Plaintiff $3.21 cents for each of the two (2) hours over forty hours Plaintiff worked that work week.

101. For the workweek July 9th through July 15th, 2023, Plaintiff worked 48 hours and Defendants paid Plaintiff $3.21 cents for each of the eight (8) hours over forty hours Plaintiff worked that work week.

102. For the workweek July 16th through July 22nd, 2023, Plaintiff worked 53 hours and Defendants paid Plaintiff $3.21 cents for each of the thirteen (13) hours over forty hours Plaintiff worked that work week.

103. For the workweek July 23rd through July 29th, 2023, Plaintiff worked 53 hours and Defendants paid Plaintiff $3.21 cents for each of the thirteen (13) hours over forty hours Plaintiff worked that work week.

104. For the workweek July 30th through August 5th, 2023, Plaintiff worked 51 hours and Defendants paid Plaintiff $3.21 cents for each of the eleven (11) hours over forty hours Plaintiff worked that work week.

105. For the workweek August 6th through August 12th, 2023, Plaintiff worked 52 hours and Defendants paid Plaintiff $3.21 cents for each of the twelve (12) hours over forty hours Plaintiff worked that work week.

106. For the workweek August 13th through August 19th, 2023, Plaintiff worked 52 hours and Defendants paid Plaintiff $3.21 cents for each of the eight (8) hours over forty hours Plaintiff worked that work week.

107. For the workweek August 20th through August 26th, 2023, Plaintiff worked 48 hours and Defendants paid Plaintiff $3.21 cents for each of the eight (8) hours over forty hours Plaintiff worked that work week.

108. For the workweek August 27th through September 2nd, 2023, Plaintiff worked 48 hours and Defendants paid Plaintiff $3.21 cents for each of the eight (8) hours over forty hours Plaintiff worked that work week.

109. For the workweek September 3rd through September 9th, 2023, Plaintiff worked 44 hours and Defendants paid Plaintiff $3.21 cents for each of the four (4) hours over forty hours Plaintiff worked that work week.

110. For the workweek September 10th through September 16th, 2023, Plaintiff worked 50 hours and Defendants paid Plaintiff $3.21 cents for each of the ten (10) hours over forty hours Plaintiff worked that work week.

111. For the workweek September 17th through September 23rd, 2023, Plaintiff worked 48 hours and Defendants paid Plaintiff $3.21 cents for each of the eight (8) hours over forty hours Plaintiff worked that work week.

112. For the workweek September 24th through September 30th, 2023, Plaintiff worked 50 hours and Defendants paid Plaintiff $3.21 cents for each of the ten (10) hours over forty hours Plaintiff worked that work week.

113. For the workweek October 1st through October 7th, 2023, Plaintiff worked 52 hours and Defendants paid Plaintiff $3.21 cents for each of the twelve (12) hours over forty hours Plaintiff worked that work week.

114. For the workweek October 8th through October 14th, 2023, Plaintiff worked 47 hours and Defendants paid Plaintiff $3.21 cents for each of the seven (7) hours over forty hours Plaintiff worked that work week.

115. For the workweek October 15th through October 21st, 2023, Plaintiff worked 42 hours and Defendants paid Plaintiff $3.21 cents for each of the two (2) hours over forty hours Plaintiff worked that work week.

116. For the workweek October 22nd through October 28th, 2023, Plaintiff worked 48 hours and Defendants paid Plaintiff $3.21 cents for each of the eight (8) hours over forty hours Plaintiff worked that work week.

117. For the workweek October 29th through November 4th, 2023, Plaintiff worked 51 hours and Defendants paid Plaintiff $3.21 cents for each of the eleven (11) hours over forty hours Plaintiff worked that work week.

118. For the workweek November 12th through November 18th, 2023, Plaintiff worked 48 hours and Defendants paid Plaintiff $3.21 cents for each of the eight (8) hours over forty hours Plaintiff worked that work week.

119. For the workweek November 19th through November 25th, 2023, Plaintiff worked 42 hours and Defendants paid Plaintiff $3.21 cents for each of the two (2) hours over forty hours Plaintiff worked that work week.

120. For the workweek November 26th through December 2nd, 2023, Plaintiff worked 51 hours and Defendants paid Plaintiff $3.21 cents for each of the eleven (11) hours over forty hours Plaintiff worked that work week.

121. For the workweek December 3rd through December 9th, 2023, Plaintiff worked 51 hours and Defendants paid Plaintiff $3.21 cents for each of the eleven (11) hours over forty hours Plaintiff worked that work week.

122. For the workweek December 10th through December 16th, 2023, Plaintiff worked 61 hours and Defendants paid Plaintiff $3.21 cents for each of the twenty one (21) hours over forty hours Plaintiff worked that work week.

123. For the workweek December 17th through December 23rd, 2023, Plaintiff worked 55 hours and Defendants paid Plaintiff $3.21 cents for each of the fifteen (15) hours over forty hours Plaintiff worked that work week.

124. For the workweek December 24th through December 30th, 2023, Plaintiff worked 53 hours and Defendants paid Plaintiff $3.21 cents for each of the thirteen (13) hours over forty hours Plaintiff worked that work week.

125. For the workweek January 7th through January 13th, 2024, Plaintiff worked 45 hours and Defendants paid Plaintiff $3.21 cents for each of the five (5) hours over forty hours Plaintiff worked that work week.

126. For the workweek January 14th through January 20th, 2024, Plaintiff worked 55 hours and Defendants paid Plaintiff $3.21 cents for each of the fifteen (15) hours over forty hours Plaintiff worked that work week.

127. For the workweek January 21st through January 27th, 2024, Plaintiff worked 46 hours and Defendants paid Plaintiff $3.21 cents for each of each of the six (6) hours over forty hours Plaintiff worked that work week. S

128. For the workweek January 28th through February 3rd, 2024, Plaintiff worked 52 hours and Defendants paid Plaintiff $3.21 cents for each of the twelve (12) hours over forty hours Plaintiff worked that work week.

129. For the workweek February 4th through February 10th, 2024, Plaintiff worked 52 hours and Defendants paid Plaintiff $3.21 cents for each of the twelve (12) hours over forty hours Plaintiff worked that work week.

130. For the workweek February 11th through February 17th, 2024, Plaintiff worked 52 hours and Defendants paid Plaintiff $3.21 cents for each of the twelve (12) hours over forty hours Plaintiff worked that work week.

131. For the workweek February 18th through February 24th, 2024, Plaintiff worked 58 hours and Defendants paid Plaintiff $3.21 cents for each of the eighteen (18) hours over forty hours Plaintiff worked that work week.

132. For the workweek February 25th through March 2nd, 2024, Plaintiff worked 52 hours and Defendants paid Plaintiff $3.21 cents for each of the twelve (12) hours over forty hours Plaintiff worked that work week.

133. For the workweek March 3rd through March 9th, 2024, Plaintiff worked 45 hours and Defendants paid Plaintiff $3.21 cents for each of the five (5) hours over forty hours Plaintiff worked that work week. each of

134. For the workweek March 10th through March 16th, 2024, Plaintiff worked 48 hours and Defendants paid Plaintiff $3.21 cents for each of the eight (8) hours over forty hours Plaintiff worked that work week.

135. For the workweek March 17th through March 23rd, 2024, Plaintiff worked 41 hours and Defendants paid Plaintiff $3.21 cents for each of the one (1) hour over forty hours Plaintiff worked that work week.

136. For the workweek March 24th through March 30th, 2024, Plaintiff worked 41 hours and Defendants paid Plaintiff $3.21 cents for each of the one (1) hour over forty hours Plaintiff worked that work week.

137. For the workweek March 31st through April 6th, 2024, Plaintiff worked 46 hours and Defendants paid Plaintiff $3.21 cents for each of the six (6) hours over forty hours Plaintiff worked that work week.

138. For the workweek April 7th through April 13th, 2024, Plaintiff worked 41 hours and Defendants paid Plaintiff $3.21 cents for each of the one (1) hour over forty hours Plaintiff worked that work week.

139. For the workweek April 14th through April 20th, 2024, Plaintiff worked 47 hours and Defendants paid Plaintiff $3.21 cents for each of the seven (7) hours over forty hours Plaintiff worked that work week.

140. For the workweek May 12th through May 18th, 2024, Plaintiff worked 42 hours and Defendants paid Plaintiff $3.21 cents for each of the two (2) hours over forty hours Plaintiff worked that work week.

141. For the workweek May 19th through May 25th, 2024, Plaintiff worked 41 hours and Defendants paid Plaintiff $3.21 cents for the one (1) hour over forty hours Plaintiff worked that work week.

142. For the workweek June 9th through June 15th, 2024, Plaintiff worked 41 hours and Defendants paid Plaintiff $3.21 cents for the one (1) hour over forty hours Plaintiff worked that work week.

143. For the workweek June 23rd through June 29th, 2024, Plaintiff worked 41 hours and Defendants paid Plaintiff $3.21 cents for the one (1) hour over forty hours Plaintiff worked that work week.

144. For the workweek July 7th through July 13th, 2024, Plaintiff worked 43 hours and Defendants paid Plaintiff $3.21 cents for each of the three (3) hours over forty hours Plaintiff worked that work week.

145. For the workweek July 14th through July 20th, 2024, Plaintiff worked 49 hours and Defendants paid Plaintiff $3.21 cents for each of the nine (9) hours over forty hours Plaintiff worked that work week.

146. For the workweek July 28th through August 3rd, 2024, Plaintiff worked 42 hours and Defendants paid Plaintiff $3.21 cents for each of the two (2) hours over forty hours Plaintiff worked that work week.

147. For the workweek September 15th through September 21st, 2024, Plaintiff worked 41 hours and Defendants paid Plaintiff $3.21 cents for each of the one (1) hour over forty hours Plaintiff worked that work week.

148. For the workweek September 29th through October 5th, 2024, Plaintiff worked 41 hours and Defendants paid Plaintiff $3.21 cents for each of the one (1) hour over forty hours Plaintiff worked that work week.

149. For the workweek October 6th through October 12th, 2024, Plaintiff worked 50 hours and Defendants paid Plaintiff $3.21 cents for each of the ten (10) hours over forty hours Plaintiff worked that work week.

150. For the workweek October 13th through October 19th, 2024, Plaintiff worked 42 hours and Defendants paid Plaintiff $3.21 cents for each of the two (2) hours over forty hours Plaintiff worked that work week.

151. For the workweek October 20th through October 26th, 2024, Plaintiff worked 53 hours and Defendants paid Plaintiff $3.21 cents for each of the thirteen (13) hours over forty hours Plaintiff worked that work week.

152. For the workweek October 27th through November 2nd, 2024, Plaintiff worked 50 hours and Defendants paid Plaintiff $3.21 cents for each of the ten (10) hours over forty hours Plaintiff worked that work week.

153. For the workweek November 3rd through November 9th, 2024, Plaintiff worked 42 hours and Defendants paid Plaintiff $3.21 cents for each of the two (2) hours over forty hours Plaintiff worked that work week.

154. For the workweek November 10th through November 16th, 2024, Plaintiff worked 49 hours and Defendants paid Plaintiff $3.21 cents for each of the nine (9) hours over forty hours Plaintiff worked that work week.

155. Plaintiff also worked additional work weeks for which no data was available to the Plaintiff prior to this Complaint and these have *not* been detailed in the

paragraphs Seventy Seven (77) through One Hundred Fifty Four (154) of this Complaint.

156. Plaintiff has worked additional overtime hours for weeks not recorded paragraphs Seventy Seven (77) through One Hundred Fifty Four (154) of this Complaint.

Sub-Part 5: Tip Pool Violations.

157. Defendant Amore utilized a tip pool as that term is defined under the Act, *see e.g.*, 20 C.F.R. Sub-Part D, 29 C.F.R. §531.54 and 29 U.S.C. §203(m).

158. Defendants provided training to Plaintiff in or about 2021 at the Restaurant.

159. Defendants did not provide Plaintiff with training material nor written material that refers to, state, or explain the tip pool percentages or allocations.

160. Defendants did not provide any oral explanation of the Restaurant's tip pool percentages or allocations to the Plaintiff.

161. Defendants required servers, including Plaintiff, to participate in a tip pool.

162. Defendants' tip pool policy practice required servers to contribute **all** of their tips in to the Defendants' tip pool.

163. Defendants tip pool required the Plaintiff to contribute **all** of his tips to the tip pool.

164. Allegedly, Defendant Amore had a tip pool to which servers would contribute all of their tips, which would then be paid out to hosts, server assistants, and bartenders, as well as other parties, in addition to the servers.

165. Defendant Amore would also retain tips from the servers' tip pool, including those contributed to by Plaintiff, and distribute tips from the tip pool to the following parties: (a) kitchen staff, i.e. "back of house" staff; (b) managers; (c) Disc Jockeys; and, (d) Santa Clause impersonators, in each work week the Plaintiff worked.

166. Defendant Amore would also retain tips from the servers' tip pool, including those contributed to by Plaintiff, and retain and distribute tips from the tip pool to the owners of Defendant Amore for use in paying for operating costs, including, but not limited to paying for decorations for the Restaurant.

167. Defendant Amore did not provide the Plaintiff – or other servers – with a daily point of sale report showing the servers', including Plaintiff, their gross sales, cash tips, credit card tips, and tip pool contributions.

168. Defendant Amore and its management was aware of Defendant Amore's impermissible tip pool practices.

169. Plaintiff also turned in cash tips received from the tip pool at the end of each shift worked to the Defendants.

170. Defendant Amore recorded servers' tips, including Plaintiff's cash tips turned in to the host, in a ledger at the end of each shift.

171. Defendant Amore paid Plaintiff a percentage of tips he should have received from the tip pool on a weekly pay check paid through a direct deposit.

172. Defendant Amore repeatedly raised questions with management regarding the tip pool retention and allocation and was repeatedly ignored. Defendant Amore never provided an answer to Plaintiff regarding his tip pool allocation or percentages or distribution.

Sub-Part 6: Retaliation

173. In or about June 24, 2024, Plaintiff complained to Defendant Amore's general manager Mr. Camillo Amarouchi that tips from the tip pool were being illegally provided to impermissible parties and no description of the tip pool was being provided to servers, including Plaintiff.

174. The next day, Defendant Amore provided Plaintiff with a check totaling $300.00.

175. In the weeks after Plaintiff complained to Defendant Amore about his concerns regarding the servers' tip pool contributions, allocations, and distribution, Defendant Amore both cancelled Plaintiff's requested time off and refused to allow Plaintiff to take his customary paid vacation totaling four (4) paid days of vacation pay.

## COUNT I: FAILURE TO PAY MINIMUM WAGE – EXCESSIVE & INAPPROPRIATE "SIDE-WORK"

176. Plaintiff restates and reallege paragraphs one (1) through one hundred seventy-five (175), *supra*.

177. Defendants' willful failure to pay Plaintiff the full minimum wage for inappropriate Side Work and for Side Work exceeding twenty percent (20%) of each shift constitutes a violation of the §6 of the Act, 29 U.S.C. §206.

178. Defendants owe Plaintiff back wages, for both regular time and any overtime, in an amount to be determined at trial for all improperly paid Side Work pursuant to 29 U.S.C. §206 and §216.

179. Additionally, Defendants owe Plaintiff liquidated damages in an equal amount for all improperly paid Side Work pursuant to 29 U.S.C. §206 and §216.

## COUNT II: FAILURE TO PAY MINIMUM WAGE – TIP POOL VIOLATIONS

180. Plaintiff restates and reallege paragraphs one (1) through one hundred seventy-five (175), *supra*.

181. Defendants' willful violations of the U.S. Department of Labor's regulations governing tip pools, i.e., (a) allowing managers, back-of-house staff, and other parties to participate, (2) failing to inform the Plaintiff of the terms of the tip pool, and (3) failing to distribute all of the tip pool to customarily tipped employees (and

thus illegally retaining a portion of the tip pool for management), constitutes a violation of the §6 of the Act, 29 U.S.C. §206.

182. Defendants owe Plaintiff back wages in an amount to be determined at trial for (1) all illegally retained tips, (2) all tips distributed to back-of-house employees, managerial employees, and any other impermissible parties, and (3) for the full, non-tipped minimum wage for all hours worked as servers pursuant to 29 U.S.C. §206 and §216.

183. Additionally, Defendants owe Plaintiff liquidated damages in an equal amount for all illegally retained tips, all tips to back-of-house employees, managerial employees, and any other impermissible parties, and for all unpaid full (non-tip credit) minimum wages pursuant to 29 U.S.C. §206 and §216.

## COUNT III: FAILURE TO PAY OVERTIME WAGES

184. Plaintiff restates and reallege paragraphs one (1) through one hundred seventy-five (175), *supra*.

185. For various workweeks between December 2021 and November 2024, Defendants violated the overtime provisions of the Fair Labor Standard Act, 29 U.S.C. §207, by failing to pay Plaintiff one and one-half (1½) times his "regular rate" of pay for all hours worked in excess of forty (40).

186. Defendants owe Plaintiff in an amount to be determined at trial in unpaid overtime wages for the workweeks between December 2021 and November 2024. 29 U.S.C. §207 and §216.

187. Additionally, Defendants owe Plaintiff liquidated damages for failing to pay overtime wages for the workweeks between December 2021 and November 2024. 29 U.S.C. §207 and §216.

## COUNT IV: RETALIATION CLAIM UNDER THE FLSA

188. Plaintiff restates and reallege paragraphs one (1) through one hundred seventy-five (175), *supra*.

189. As more fully described in paragraphs 173 through 175, *supra*, Defendants retaliated against Plaintiff when Plaintiff complained about the illegal tip pool distributions to impermissible tip pool participants, including the general manager and cooks.

188. Defendants retaliated against Plaintiff by reducing his scheduled, paid vacation by four (4) days approximately one week *after* Plaintiff complained about the illegal tip pool distributions to impermissible tip pool participants, including the general manager and cooks.

189. As a result of the Defendants' retaliation, and in violation of §15(a)(3) of the Act, Plaintiff lost paid vacation he would have received in an amount to be determined at trial. 29 U.S.C. §15(a)(3) and §215(a)(3).

190. Additionally, Defendants owe Plaintiff liquidated damages for reducing his scheduled, paid vacation by four (4) days Plaintiff in retaliation for Plaintiff's complaints about the illegal tip pool. 29 U.S.C. 29 U.S.C. §207 and §216.

## JURY TRIAL

191. Plaintiff demands a jury trial as to all issues triable by a jury trial.

## **PRAYER FOR RELIEF**

192. Based upon the forgoing paragraphs, Plaintiff respectfully ask this Court to find and order the following:

A. That the Court grant Plaintiff a trial by jury on all issues of fact;

B. That the Court find and declare that Defendant Gail Parker acted directly in the interest of Defendant Amore e Amore, Incorporated's relation of the Plaintiff, and that as such Defendant Gail Parker was an "employer" of Plaintiff within the meaning of §3(d) of the Act, 29 U.S.C. §203(d);

C. That the Court find and declare that Defendant Amore e Amore, Incorporated and Defendant Gail Parker, collectively, have violated the Fair Labor

Standards Act, 29 U.S.C. §201 *et. seq*., have failed to properly pay the Plaintiff his minimum wages as required, and to have acted "willfully" thus entitling the Plaintiff to liquidated damages under the Act;

D. That Defendant Amore e Amore, Incorporated and Defendant Gail Parker be ordered to pay Plaintiff back wages equaling the minimum required under §6 of the Act, 29 U.S.C. §206, for all applicable workweeks;

E. That Defendant Amore e Amore, Incorporated and Defendant Gail Parker be ordered to pay Plaintiff overtime wages, at a rate equal to one and one-half his "regular rate" of pay, for all workweeks in which Plaintiff worked more than forty (40) hours in the Actionable Period.

F. That Defendant Amore e Amore, Incorporated and Defendant Gail Parker be ordered to pay Plaintiff liquidated damages under the Act;

G. That Defendant Amore e Amore, Incorporated and Defendant Gail Parker be ordered to pay Plaintiff's reasonable attorneys' fees, and costs of this action pursuant to 29 U.S.C. §216; and,

H. For such other and further relief as the Court finds just and appropriate.

Respectfully submitted this twenty-second (22nd) day of December, 2024.

*<u>/s/ Peter H. Steckel</u>*
Peter H. Steckel
Georgia Bar Number 491935
*Counsel for Plaintiff*

Steckel Law, L.L.C.

1120 Ivywood Drive
Athens, Georgia 30606
(404) 717-6220
Email: peter@SteckelWorkLaw.com